UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| RAFAEL GARCIA, JR., | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. 20 C 3608 |
| v. | ) |
| | ) Judge Sara L. Ellis |
| AT&T CORPORATION, | ) |
| | ) |
| Defendant. | ) |

**OPINION AND ORDER**

Plaintiff Rafael Garcia, Jr., worked for Defendant AT&T Corporation ("AT&T") as a premises technician. After AT&T terminated Garcia, he filed this lawsuit alleging that AT&T discriminated against him on the basis of: ancestry, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*; age, in violation of the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621 *et seq.*; and disability, in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*. AT&T has moved for summary judgment on Garcia's claims. Because no reasonable juror could conclude that Garcia's ancestry, age, or disability caused AT&T to terminate his employment, Garcia's claims cannot survive summary judgment.

**BACKGROUND**[1]

Garcia began working for AT&T as a premises technician in January 2008. A premises technician is responsible for "inside or outside installation and repair of equipment and services

---

[1] The Court derives the facts set forth in this section from the statements of fact submitted by the parties to the extent they comport with Local Rule 56.1. The Court takes these facts in the light most favorable to Garcia, the non-movant. The Court has considered Garcia's response and supporting exhibits and included in this background section only those portions of the statements and responses that are appropriately presented, supported, and relevant to resolution of the pending motion for summary judgment.

to provide voice, data, and video services," and drives company vehicles to provide that installation and repair work. Doc. 61 ¶ 7. Garcia is a Puerto Rican male over the age of forty and disabled, with hearing loss and diabetes. In August 2019, AT&T terminated Garcia for violating AT&T's policies governing personal safety and use of company vehicles. AT&T supervisors ensure their employees understand company policies and determine the appropriate course of action if employees violate those policies. Carlos Ramirez supervised Garcia from February 2019 through August 2019 when he was fired.

Since beginning his employment with AT&T in 2008, Garcia has received numerous performance- and policy-based disciplines, including:

- Failing to meet performance standards (July 2008);
- Placement on performance improvement plan (June 2009, October 2009);
- Suspension for vehicle and safety violations (February 2010);
- Coaching for work errors (May 2010, January 2011);
- Written warning for job performance (November 2010; May 2012; February 2019);
- Coaching for violation of safety and security of vehicle policy (February 2011);
- Written warning for work practice violations (August 2011; October 2012);
- Suspension for code of business policy violation (August 2011; March 2019);
- Written warning and suspension for security and safety of vehicle violation (May 2012);
- Written warning and suspension for "customer mistreat" (July 2012; July 2018);
- Written warning and suspension for security violation (May 2015);
- Yearly review evaluation of "does not meet expectations" (2016; 2017);
- Counseling for attendance (January 2017; May 2018);
- Verbal or written warning for attendance (February 2017; June 2018; July 2018);
- Written warning and suspension for attendance (September 2018; July 2019);

2

- Written warning and suspension for texting while operating a company vehicle (June 2017; May 2019);
- Written warning and suspension for "failing to pre-call and post-call customers" (April 2019);
- Coaching for falsifying time records (May 2019);
- Suspension pending termination for safety and company vehicle violations (July 2019).

*Id.* ¶¶ 12–42.

Following one of Garcia's policy violations, Ramirez had Garcia read the 20-page premise technician guidelines out loud, which took between 30 and 40 minutes. Ramirez could not recall previously disciplining another employee in such a way, but testified that he "wanted to help [Garcia]" by answering any questions that he had about the guidelines. Doc. 61-1 at 253. Garcia claims, however, that this was instead motivated by Ramirez's animus towards Garcia's protected characteristics. Garcia alleges that over the seven months that Ramirez was his supervisor, that Ramirez made discriminatory comments, such as: (1) "if Garcia could not hear what he was saying then he would fire Garcia;" (2) "if [Garcia] couldn't overcome [his] disabilities, that [Ramirez would] fire [him] because of [his] disabilities;" and (3) "Garcia was getting too old to be an AT&T technician." Doc. 58 ¶ 8; Doc. 61-1 at 133; Doc. 61 ¶ 78.

In July 2019, AT&T learned that Garcia received a ticket for speeding in a school zone in a company vehicle. Garcia paid the speeding fine. On July 12, 2019, Ramirez held a coaching session with Garcia to address the speeding ticket, and on the same day Ramirez reported the speeding ticket to AT&T's Employee Relations Manager. On July 17, 2019, Ramirez and his supervisor, Ubaldo Vasquez, recommended Garcia's suspension pending termination to AT&T's human resources department based on his history of failing to comply with AT&T's guidelines. On July 24, 2019, AT&T's Employee Relations Manager notified Ramirez that the Business Unit and Labor Relations Department reviewed the recommendation, determined that it was

3

supported, and issued Garcia a suspension pending termination. Garcia then filed a grievance with the International Brotherhood of Electrical Workers Local 21 Union. On August 19, 2019, a review board consisting of union representatives and AT&T representatives, met to address Garcia's grievance. During this meeting, Garcia admitted that "sometimes [he] can be reckless" when driving. Doc. 61 ¶ 53. On August 22, 2019, AT&T's Lead Labor Relations Manager, issued a letter to Garcia's union representative stating that AT&T "finds just cause to dismiss Rafael Garcia for continued violations of the AT&T Premise Technician Guidelines and AT&T Safety Practices." Doc. 61 ¶ 55. As such, AT&T denied Garcia's grievance and terminated him.

## LEGAL STANDARD

Summary judgment obviates the need for a trial where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To determine whether a genuine dispute of material fact exists, the Court must pierce the pleadings and assess the proof as presented in depositions, documents, answers to interrogatories, admissions, stipulations, and affidavits or declarations that are part of the record. Fed. R. Civ. P. 56(c)(1); *A.V. Consultants, Inc. v. Barnes*, 978 F.2d 996, 999 (7th Cir. 1992). The party seeking summary judgment bears the initial burden of demonstrating that no genuine dispute of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Bunn v. Fed. Deposit Ins. Corp. for Valley Bank Ill.*, 908 F.3d 290, 295 (7th Cir. 2018). In response, the non-moving party cannot rest on mere pleadings alone but must use the evidentiary tools listed above to identify specific material facts that demonstrate a genuine dispute for trial. Fed. R. Civ. P. 56(c)(1); *Celotex*, 477 U.S. at 324; *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 627 (7th Cir. 2014). The Court must construe all facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Wehrle v. Cincinnati Ins. Co.*, 719

4

F.3d 840, 842 (7th Cir. 2013). However, a bare contention by the non-moving party that an issue of fact exists does not create a factual dispute, *Bellaver v. Quanex Corp.*, 200 F.3d 485, 492 (7th Cir. 2000), and the non-moving party is "only entitled to the benefit of inferences supported by admissible evidence, not those 'supported by only speculation or conjecture,'" *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 568 (7th Cir. 2017) (citation omitted).

## ANALYSIS

To prove a claim for ancestry discrimination under Title VII, age discrimination under the ADEA, or disability discrimination under the ADA, Garcia must demonstrate that the evidence, considered as a whole, would permit a reasonable factfinder to conclude that his ancestry, age, or disability caused an adverse employment action. *Ortiz v. Werner Enter., Inc.*, 834 F.3d 760, 765 (7th Cir. 2016); *see Carson v. Lake Cty.*, 865 F.3d 526, 532–33 (7th Cir. 2017) (applying *Ortiz* to ADEA claims); *Aberman v. Bd. of Educ. Of City of Chicago*, 242 F. Supp. 3d 672, 686–87 (applying *Ortiz* to ADA claims). Prior to *Ortiz*, courts distinguished between "direct" and "indirect" methods of analyzing discrimination claims. *Id.* at 763–64. *Ortiz*, however, eliminated this distinction and directed courts to ask "simply whether the evidence would permit a reasonable factfinder to conclude that the plaintiff's race, ethnicity, sex, religion, or other proscribed factor caused the discharge or other adverse employment action." *Id.* at 765.

But, even after *Ortiz*, the *McDonnell Douglas* burden-shifting framework still proves useful for analyzing discrimination claims. *David v. Bd. of Tr. Of Cmty. Coll. Dist. No. 508*, 846 F.3d 216, 224 (7th Cir. 2017) ("[B]oth before and after *Ortiz*, *McDonnell Douglas* is a means of organizing, presenting, and assessing circumstantial evidence . . . in discrimination cases."). To establish a *prima facie* case under the *McDonnell Douglas* framework, Garcia must show that:

5

(1) he belongs to a protected class, (2) his job performance met AT&T's legitimate expectations, (3) he suffered an adverse employment action, and (4) other similarly situated individuals, who were not members of a protected class, received more favorable treatment. If Garcia establishes a *prima facie* case, the burden shifts to AT&T to articulate a legitimate, non-discriminatory reason for Garcia's termination, which Garcia may then attack as pretext. *McDonnell Douglas Corp.*, 411 U.S. 792, 802 (1973).

AT&T argues that Garcia cannot establish a *prima facie* case because his job performance did not meet AT&T's legitimate expectations and that Garcia failed to identify similarly situated individuals that AT&T treated more favorably. Because the parties frame their arguments using the *McDonnell Douglas* framework, the Court will first consider the evidence through this framework, and then turn to a cumulative review of the evidence "to determine whether it permits a reasonable factfinder to determine that" Garcia was terminated because of his ancestry, age, or disability. *David*, 846 F.3d at 224. The Court agrees that Garcia cannot establish a *prima facie* claim under *McDonell Douglas* and that even reviewing the evidence cumulatively, Garcia cannot establish that his ancestry, age, or disability caused his termination.

**I.**     ***McDonnell Douglas***

The parties agree that Garcia belongs to protected classes and that he suffered an adverse employment action. As such, the Court will address only the remaining two elements of the *McDonnell Douglas* framework, whether (1) Garcia's job performance met AT&T's legitimate expectations, and (2) whether any similarly situated individuals received more favorable treatment. Because Garcia was not meeting AT&T's legitimate expectations and has not identified any similarly situated individuals, he has not established a *prima facie* case under the *McDonnell Douglas* framework.

6

a.      AT&T's Legitimate Expectations

AT&T argues that Garcia was not meeting its expectations based on his history of violating AT&T's workplace policies, including the violation that led to his termination, for speeding in a school zone while driving a company vehicle. Garcia responds that AT&T's "complaints about Plaintiff do not concern his qualifications for the job," and that his policy violations "do not impugn [his] qualifications." Doc. 57 at 10. Garcia also points to favorable reviews he received for "tool inspection," "driving competency for demonstrating good defensive driving skills," and "for his vehicle being in good working condition." Doc. 57 at 10. That Garcia had a mix of positive and negative work reviews in the past, however, does not necessarily mean that he was meeting AT&T's legitimate expectations at the time of his termination. Even if Garcia's work quality was excellent, his failure to comport with company policies demonstrates that he was not meeting AT&T's legitimate expectations. *See Slutsky v. Jacobson Cos.*, No. 16-cv-1073, 2017 WL 2813662, at *5 (N.D. Ill. June 29, 2017) (finding violating company policies means an employee is not meeting legitimate expectations and collecting cases).

Garcia argues that his prior violations were for "minor issues or for issues outside of [his] control," and specifically points to write-ups for sending a text message while pulled over in a company vehicle, failing to take a lunch break, and getting injured on the job. Doc. 57 at 11. Failing to take a lunch break and texting while operating a company vehicle—even if the vehicle is pulled over—violate AT&T's policies. *See* Doc. 61-1 (deposition testimony of Carlos Ramirez); Doc. 61-5 (write-up explaining employees are required to take a 30-minute lunch break). Garcia does not provide details about his write-up for "injur[ing] himself on the job," Doc. 57 at 11; however, this appears to be referring to an incident in which Garcia failed to use a

step ladder, resulting in a back injury. Doc. 61-1 (ATT00216). According to the write-up, Garcia received discipline not for injuring himself but rather for failing to "create a safe work environment," in violation of AT&T's Technician Expectations. *Id.* Garcia's actions violated the policies, and it is not this Court's place to determine the wisdom of AT&T's policies. *Millbrook v. IBP, Inc.*, 280 F.3d 1169, 1181 (7th Cir. 2002) ("[A] court's role [is] not to act as a 'super personnel department' that second-guesses employer's business judgments."); *Widmar v. Sun Chem. Corp.*, 772 F.3d 457, 464 (7th Cir. 2014) ("This court has repeatedly stated that it is not a super-personnel department that second-guesses employer policies that are facially legitimate. . . . A court cannot interfere because an employer's decision is unwise or unfair."). Because Garcia violated AT&T's policies, he cannot satisfy the legitimate expectations element of the *McDonnell Douglas* framework.

   b.  **Similarly Situated Individuals**

Even if Garcia were meeting AT&T's legitimate expectations, he has failed to present evidence of any similarly situated comparators, which dooms his claim under *McDonnell Douglas*. *McDonnell Douglas*, 411 U.S. at 803. Without pointing to specific comparators, Garcia alleges generally that similarly situated individuals, who were not members of protected classes, received more favorable treatment. AT&T's supplemental interrogatories asked Garcia to identify "non-Hispanic" employees whom AT&T terminated under similar circumstances or treated more favorably. Doc. 61 ¶ 60. Garcia responded that he could not recall the names of such employees. *Id.* Here, too, Garcia does not identify any similarly situated individuals relating to any of his claims. Rather, Garcia asserts that he is not aware of any other employees "who were subjected to as much discipline and write ups[.]" Doc. 57 at 12. It is true that Garcia has a lengthy history of write-ups throughout his entire eleven-year tenure. Doc. 61 ¶¶ 12, 42.

But, because Garcia fails to identify any individuals who engaged in similar conduct but were not disciplined, he fails to establish the similarly situated individuals element.

Because Garcia cannot establish that he was meeting AT&T's legitimate expectations, and because he has failed to identify any comparators, he cannot establish a *prima facie* case under the *McDonnell Douglas* framework.

## II. Cumulative Assessment of the Evidence

"A district court must not limit its analysis to *McDonnell Douglas* or treat some evidence as relevant to the *McDonnell Douglas* analysis but not to the broader question of whether 'a reasonable factfinder [could] conclude that the plaintiff's race, ethnicity, sex, religion, or other proscribed factor caused the [adverse employment action.]'" *Zegarra v. John Crane, Inc.*, 218 F. Supp. 3d 655, 665–66 (N.D. Ill. 2016) (quoting *Ortiz*, 834 F.3d at 765) (alterations in original). Rather, the Court must also consider whether Garcia's evidence would cause "a reasonable factfinder to determine" that his ancestry, age, or disability were the motivating factors for his termination. *Aberman*, 242 F. Supp. 3d at 686–87, 690–91 (after addressing the *McDonnell Douglas* test, cumulatively assessing "all the evidence" to determine if the plaintiff could prove a case of age and disability discrimination at trial).

In support of his discrimination claims, Garcia argues that Ramirez, his supervisor from February 2019 until AT&T terminated him, subjected him to "unique forms" of punishments, such as forcing him to read the 20-page premise technician guidelines out loud for "30–40 minutes." Doc. 61 ¶ 81. However, Garcia does not explain how this form of discipline demonstrates that AT&T fired him based on a protected class. While this form of discipline certainly is not commonplace, it is undisputed that Garcia had a number of previous write-ups for violating these guidelines. Ramirez testified to that effect and that he "wanted to help [Garcia]"

9

by answering any questions that he had about the guidelines. Doc. 61-1 at 253 (deposition testimony of Ramirez). While Ramirez had never previously disciplined any other employee in this manner, Doc. 61 ¶ 82, the undisputed facts do not support an inference of discrimination based on ancestry, age, or disability.

Second, Garcia alleges that Ramirez made statements that demonstrated his animus towards Garcia's protected characteristics and support an inference that Garcia was fired based on his ancestry, age, or disability. Specifically, Ramirez allegedly stated: (1) "if Garcia could not hear what he was saying then he would fire Garcia;"[2] (2) "if [Garcia] couldn't overcome [his] disabilities, that [Ramirez would] fire [him] because of [his] disabilities;" and (3) "Garcia was getting too old to be an AT&T technician." Doc. 58 ¶ 8; Doc. 61-1 at 133; Doc. 61 ¶ 78. These comments clearly support an inference of discriminatory animus based on age and disability. Although Ramirez denies having made these statements, at this stage, the Court must construe all facts and draw all reasonable inferences in Garcia's favor as the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

Regardless of whether Ramirez actually made these statements, the events preceding Garcia's termination make clear that Ramirez's comments about Garcia's age and disability did not cause his termination. While he initiated the process of terminating Garcia, Ramirez did not have authority to unilaterally terminate Garcia. It is undisputed that AT&T only terminated

---

[2] Garcia's Local Rule 56.1(b)(3) response and his deposition testimony conflict as to the specifics of this statement. In the response, Garcia explains this interchange as Ramirez threatening to fire Garcia if Garcia could not hear Ramirez. In his deposition testimony, Garcia recounts that Ramirez threatened to fire him if he (Ramirez) could not hear or understand Garcia. *Compare* Doc. 58 ¶ 8 ("When Ramirez first began supervising Garcia he told Garcia that if Garcia could not hear what he was saying then he would fire Garcia."), *with* Doc. 58-2 at 4 ("Q: Okay. Now, other than the difficulty hearing, how do you believe that Mr. Ramirez harassed you? A: Well, he said it. He said at the beginning when I met him. He said that if I can't – if he can't hear what I'm saying, or understand what I'm saying, that he would fire me."). The Court will not resolve this factual dispute, but instead notes that the first version could support an inference of disability discrimination.

Garcia after: (1) Ramirez raised the speeding ticket to AT&T's Employee Relations Manager and his supervisor, Vasquez; (2) after discussing the speeding ticket, Vasquez and Ramirez together recommended to AT&T's human resources department that Garcia be suspended pending termination for violating safety practices and other policies; (3) AT&T's Business Unit and Labor Relations Department independently reviewed the recommendation and determined that it was supported; and (4) Garcia filed a union grievance, received a hearing, and then AT&T denied the grievance.

Garcia presents no evidence that at any step of this process Vasquez, human resources, the Business Unit and Labor Relations Department, or anyone else involved in the decision-making process learned of Ramirez's comments. Rather, the evidence suggests that at each step, these individuals independently evaluated Garcia's policy violations and determined that termination was the appropriate resolution. Even if the decision-makers were aware of Ramirez's comments, AT&T did not terminate Garcia until *after* AT&T denied his grievance following a hearing. During his grievance hearing, Garcia admitted that "sometimes [he] can be reckless" when driving. Doc. 61 ¶ 53. Thus, the evidence suggests that AT&T terminated Garcia because he violated their policies and—as he admits—his tendency to "be reckless," and *not* because of Garcia's ancestry, age, or disability.

Because the undisputed evidence does not support an inference that Garcia was terminated because of his ancestry, age, or disability, the Court grants summary judgment for AT&T.

## CONCLUSION

For the foregoing reasons, the Court grants AT&T's motion for summary judgment [46] and enters judgment for AT&T on Garcia's complaint. Case terminated.

Dated: July 6, 2022

_____
SARA L. ELLIS
United States District Judge